**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| SHER LEFF LLP,                  )<br><br>           Plaintiff,        )<br><br>    vs.                     )<br><br>PAWA LAW GROUP, P.C.,    )<br><br>           Defendant.     ) | Civil Action No. 1:14-cv-00026-SM |

**DEFENDANT PAWA LAW GROUP'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO CONFIRM ARBITRATION AWARD**
**AND REQUEST TO EXPEDITE**

Defendant Pawa Law Group, P.C. ("PLG"), through its counsel, hereby submits this memorandum of law in support of its motion to confirm the arbitration award entered in favor of PLG and against Plaintiff Sher Leff, LLP ("Sher Leff"). The Final Award was entered on December 18, 2013. PLG moves to confirm the arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-13.

## INTRODUCTION

PLG prevailed against Sher Leff in an arbitration conducted by a panel of three experienced arbitrators from JAMS. The arbitration involved a seven-day hearing, hundreds of exhibits, numerous witnesses and multiple rounds of lengthy legal briefing. Each side was provided a full and fair opportunity to present its case to the Panel. The Panel unanimously ruled that Sher Leff is in breach of a fee agreement contract with PLG that requires the firms to split fees – 78% to Sher Leff, 22% to PLG – in the case of State of *New Hampshire v. Hess Corp.*, a

1

groundwater contamination case in which the firms have represented the State since 2003.  This

fee splitting agreement was expressly set forth in a Legal Services Agreement signed by both law

firms and the State.  The Panel found that the contract, the conduct of the parties and the

contemporaneous written evidence including admissions from Sher Leff itself demonstrated

PLG's contractual entitlement to 22 percent of the fees.  The Panel held Sher Leff to be in breach

of the parties' contract, awarded PLG over $5.6 million in past *Hess* fees, issued a declaration

that PLG is entitled to 22 percent of all future legal fees from the case still pending against

ExxonMobil, rejected Sher Leff's counterclaim in which it had contended that PLG had orally

agreed to an unsigned "Joint Representation Agreement," found Sher Leff to have acted in bad

faith, and awarded PLG over $1.1 million in arbitration attorneys' fees, prejudgment interest, and

injunctive relief requiring Sher Leff to transfer control over the account used to manage monies

in the *Hess* case to PLG.

The award should be confirmed.  Under the Federal Arbitration Act ("FAA"), "[a]rbitral

awards are nearly impervious to judicial oversight" and a "court's review of an arbitration award

is highly deferential."  *Eastern Seaboard Constr. Co. v. Gray Constr., Inc.*, 553 F.3d 1, 3 (1st

Cir. 2008) (quotation marks omitted).  Sher Leff was given every opportunity to prove its case

and lost.  Sher Leff expressly agreed in the parties' arbitration agreement to abide by and

perform the award – yet now Sher Leff refuses to do so and instead has filed suit against PLG,

seeking to vacate the award.  The award should now be confirmed.  PLG also respectfully

requests that the Court expedite these proceedings for the reasons set forth herein.

## BACKGROUND

The matter before the Court is an application by the defendant, PLG, pursuant to the

FAA, 9 U.S.C. § 9, for the entry of an order confirming the Final Award in its favor made by a

panel of three arbitrators in a JAMS-administered arbitration entitled:  *Pawa Law Group, P.C. v. Sher Leff, LLP*, Reference No. 1400014271 (the "Arbitration").  PLG seeks entry of a final judgment by this Court in accordance with the order confirming the award.

In late 2012 and early 2013 a dispute arose between PLG and Sher Leff relating to the division of attorneys' fees between them under a Legal Services Agreement (the "2010 LSA") with their mutual client, the State of New Hampshire (the "State").  The State had retained PLG and Sher Leff to represent the State in groundwater contamination litigation against numerous large oil companies in a case known as *State v. Hess*, No. 03-CV-0550 (N.H. Superior Court, Merrimack Co.) ("*Hess*").  On February 4, 2013, PLG and Sher Leff entered into the Arbitration Agreement in which they agreed to submit to binding arbitration administered by JAMS any controversy or claim between them arising out of or relating to their fee division dispute, including attorneys' fees attributable to *Hess* recoveries that had already occurred as well as attorneys' fees on *Hess* recoveries that may occur in the future, *i.e.,* as a result of recoveries from the two *Hess* defendants remaining that had not settled (*i.e.,* CITGO Petroleum Corp. and ExxonMobil).  Final Award at 4-5 (attached as Exh. A to Declaration of James Ogorchock ("Ogorchock Decl."); Arbitration Agreement at ¶ 1.1 (attached as Exh. B to Ogorchock Decl.).[1] The parties further agreed in the Arbitration Agreement to abide by and perform any award rendered by the arbitrators and that any award so rendered could be confirmed by any court of competent jurisdiction.  Arbitration Agreement at ¶ 1.8 ("The parties will faithfully observe this agreement and the rules and will perform and abide by any award rendered by the arbitrators"); *see also* Rule 25 of JAMS Comprehensive Arbitration Rules & Procedures (Oct. 1, 2010)

---

[1] CITGO Petroleum Corporation settled with the State of New Hampshire after PLG and Sher Leff entered into their arbitration agreement.  The State, represented by PLG and Sher Leff, tried its case against ExxonMobil and a verdict was rendered in favor of the State for over $236 million in April 2013.

("JAMS Rules") ("The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.").[2]

An arbitration hearing was held in Boston, Massachusetts before a panel of three arbitrators (the "Panel") at the JAMS offices, pursuant to and in accordance with the Arbitration Agreement, the Federal Arbitration Act and the JAMS Comprehensive Arbitration Rules and Procedures.  Final Award at 4-5.  The parties offered documentary evidence, called witnesses, cross-examined opposing witnesses, filed post-hearing submissions, gave closing arguments to the Panel and filed post-argument briefs.  *Id.* at 4.  In particular, the Panel admitted and considered approximately 600 documentary exhibits, heard testimony from 15 witnesses, and reviewed approximately 20 total written submissions both pre- and post-hearing.  *Id.* at 4, 7. Each side was provided a full and fair opportunity to present evidence to the Panel.

After considering the voluminous evidence submitted by the parties, including the submission of three rounds of post-hearing briefs, the Panel issued a Final Award on December 18, 2013 that finally resolved all claims between the parties (the "Final Award").  *See* Exh. A. The Panel ruled, *inter alia*, that Sher Leff had breached the 2010 LSA by failing and refusing to distribute PLG's 22% share of the attorneys' fees generated by the *Hess* case, as provided in the 2010 LSA.  The Panel further ruled that Sher Leff "has failed to live up to its obligations under the Revolving Fund," Final Award at 44, which is the account (currently controlled by Sher Leff) into which all *Hess* recoveries are paid pending distribution to the State and the firms pursuant to the LSA.  The Panel thus awarded the following:

(a)    $5,621,803 to PLG on PLG's claim for breach of the 2010 LSA;

---

[2]  Available at http://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_comprehensive_arbitration_rules-2010.pdf.

(b)     22% to PLG of any contingency fees arising from the ExxonMobil verdict, judgment or settlement in accordance with the 2010 LSA;

(c)     equitable relief in the form of an order requiring Sher Leff to immediately take whatever action is necessary to remove itself from control of the Revolving Fund under the 2010 LSA that it presently controls and to take whatever action is necessary to place PLG in control of the Revolving Fund upon the State of New Hampshire's consent to PLG being placed in control of the Revolving Fund;

(d)     attorneys' fees to PLG in the amount of $1,126,277;

(e)     accrued interest to PLG in the amount of $94,122.84; and

(f)     arbitration costs to PLG.

*Id.* at 48-50.  The Panel concluded:

> In sum, had Sher Leff not acted in bad faith and instead had lived up to its obligations, this arbitration would never have been necessary.  To the extent permitted by law, PLG should be placed in the position it would have been in had Sher Leff lived up to its obligations.

*Id.* at 33.  The Award is in full and final settlement of all claims submitted to arbitration, binding on the parties and should be confirmed.  *Id.* at 50.

Sher Leff refuses to abide by the Panel's Final Award – despite its express commitment in the arbitration agreement to "abide by and perform any award rendered by the arbitrators," s*ee* Arbitration Agreement at ¶ 1.8, even while Sher Leff has pocketed over $27 million in attorneys' fees from the *Hess* case.  Incredibly, Sher Leff also failed and refused to pay the final invoice submitted by JAMS for the fees and costs of the arbitrators in the amount of $51,079.28, despite its express agreement in the Arbitration Agreement to pay all JAMS invoices and in direct violation of the Final Award.  Declaration of Matthew F. Pawa ¶ 3-4 ("Pawa Decl."); Arbitration Agreement at ¶ 1.7; Final Award at 49-50.  As a result of Sher Leff's failure to honor its contractual and legal obligation to pay all JAMS invoices, PLG paid this amount itself in order for JAMS to release the Final Award.  Pawa Decl. ¶ 4.

At this time, Sher Leff has taken no steps to comply with the December 18, 2013 Final

Award – on the contrary, it initiated this civil action in New Hampshire Superior Court.  PLG

removed the case to this court and now moves to confirm.

## ARGUMENT

I.    **PLG Is Entitled to Confirmation of the Final Award.**

The Final Award is final and binding on all parties and should be confirmed.  *See*

Agreement to Arbitrate §§ 1.1, 1.8; JAMS Rule 24(a); Final Award at 50.  PLG is entitled to

confirmation of the Final Award and entry of final judgment in conformity with the Final Award

pursuant to 9 U.S.C. §§ 9 and 13.  *See* 9 U.S.C. § 9 ("the court must grant such an order unless

the award is vacated, modified, or corrected").  The Supreme Court has held that a court must

confirm an award unless a statutory exception applies:

> On application for an order confirming the arbitration award, the court 'must
> grant' the order 'unless the award is vacated, modified, or corrected as prescribed
> in sections 10 and 11 of this title.'  There is nothing malleable about 'must grant,'
> which unequivocally tells courts to grant confirmation in all cases, except when
> one of the 'prescribed' exceptions applies.

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).  "The confirmation of an

arbitration award is generally a summary proceeding that makes what is already a final

arbitration award a judgment of the Court."  *Bennington Iron Works v. J.P. Constr. Co.*, No. 94-

11035-GAO, 1996 WL 208494, at *1 (D. Mass. Mar. 6, 1996).

The First Circuit has held that "[a]rbitral awards are nearly impervious to judicial

oversight" and that a "court's review of an arbitration award is highly deferential."  *Eastern*

*Seaboard Constr. Co.*, 553 F.3d at 3 (quotation omitted).  Thus, courts "must accord substantial

deference to the decisions of arbitrators."  *Id.* (quotation omitted).  "Judicial intrusion is

restricted to extraordinary situations indicating abuse of arbitral power."  *Id.* at 5 (quotation

omitted).  The Court's "review of the arbitration award itself is extremely narrow and exceedingly deferential." *Bangor Gas Co., LLC v. H.Q. Energy Servs. United States*, 695 F.3d 181, 186 (1st Cir. 2012) (quotation omitted).  "Under settled precedent, an FAA award cannot be overturned based on mere disagreement by the court with the panel on a debatable issue." *Id.* at 187.  Here, the parties have completed the arbitral process and the Final Award must be confirmed by the Court.  PLG respectfully requests the Court act expeditiously on this matter given the fact that a multi-million dollar fee award that rightfully belongs to PLG and that should have been distributed a year ago has been delayed because of Sher Leff's obstinate refusal to abide by the Final Award.

Sher Leff's contention for vacating the Final Award, as set forth in its complaint, is without merit.  Sher Leff contends that the Panel somehow lost jurisdiction by issuing an Interim Award on October 22, 2013 (thirty days after receiving the final post-hearing briefs) and then issuing a Final Award after receiving additional briefing on PLG's fee petition – which supposedly violated a deadline imposed by the JAMS rules and the arbitration agreement to make an award within 30 days of the close of the record.  However, the Panel already addressed Sher Leff's jurisdictional argument in the Final Award.  *See* Final Award at 33-37.  As the Panel correctly ruled, Sher Leff and PLG consented to a procedure whereby the panel would, of necessity, retain jurisdiction if it were to grant either party's request to award fees or arbitration costs so that it could receive and resolve a petition quantifying such fees or costs.  The Panel also correctly ruled that Sher Leff waived its objection by continuing to invoke the Panel's jurisdiction after October 22, 2013 by, *inter alia*, requesting that the Panel change the Interim Award to conform to JAMS rules regarding confidentiality and even filing a Motion to Withdraw Interim Award on November 13, 2013 that not only said nothing about any alleged lack of

7

jurisdiction but that demanded that "a new award . . . must be issued."  *See* Motion to Withdraw Interim Award and Request for Hearing at 8 (Nov. 13, 2013) (attached as Exh. C to Ogorchock Decl.).  It was not until November 20, 2013 that Sher Leff belatedly asserted its jurisdictional argument – in response to PLG's petition for attorneys' fees.  The Panel acted well within its own rules and its authority to interpret its rules and the arbitration agreement.[3]

## II.     PLG Is Entitled to Pre- And Post-Judgment Interest.

**Pre-judgment Interest.**  PLG is entitled to both pre- and post-judgment interest.  In a case such as this seeking to confirm an arbitration award, pre-judgment interest is sometimes referred to as "post-arbitration award interest" and runs from the date of the arbitration award to the entry of judgment.  A federal district court sitting in diversity applies the state law of the forum state when determining whether to award pre-judgment interest and the applicable rate. *Analysis Group, Inc. v. Cent. Florida Invs., Inc.,* 629 F.3d 18, 24 (1st Cir. 2010) (affirming Massachusetts federal district court's award of prejudgment interest: "In this diversity action, Massachusetts law governs the prejudgment interest award."); *Roy v. Star Chopper Co.*, 584 F.2d 1124, 1135 (1st Cir. 1978) ("A federal court should properly apply a forum state's pre-judgment

---

[3] *See* JAMS R. 11(a) ("Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final."); 11(c) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator."); *Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 553-54 (2d Cir. 1985) (sustaining arbitrators' decision to re-set the deadline for an award by unilaterally changing the closing date of the hearing; arbitrators had authority to interpret AAA rule imposing 30-day deadline); *I Appel Corp. v. Katz*, 2005 U.S. Dist. LEXIS 26972, at *21-22 (S.D.N.Y. Nov. 9, 2005) (sustaining award that was issued beyond initial deadline imposed by AAA rules and that replaced an earlier and timely award; arbitrators have discretion to interpret rules on timeliness and finality); *aff'd*, 217 Fed. Appx. 3, 4 (2d Cir. 2007) ("First, we reject Appel's claim that the district court erred in refusing to confirm the April 15 Award. The district court properly deferred to the interpretation of the American Arbitration Association … of its own rules regarding finality, which is a concept that body has the authority to define differently in different circumstances."); *Moss v. McLucas*, 2013 U.S. Dist. LEXIS 55391, at *8-9 (S.D. Cal. Apr. 15, 2013) (under JAMS Rule 11, JAMS arbitrator has deference to interpret JAMS rules and parties' arbitration agreement; sustaining arbitrator's determination that arbitration agreement had not expired); *Spungin v. GenSpring Family Offices, LLC*, 883 F. Supp. 2d 1193, 1197 (S.D. Fla. 2012) ("Thus, to the extent that the JAMS Rules are ambiguous, Rule 11 specifically provides the Arbitrator with the discretion to interpret them.").

interest statute when sitting in a diversity case."); *Synchronics, Inc. v. Realworld Corp.*, 1995 U.S. Dist. LEXIS 17066, at *5 (D.N.H. Nov. 16, 1995) (same, case seeking confirmation of arbitration award:  court "should apply the law of the forum state when determining whether to award pre-judgment interest and the rate at which such interest accrues).[4]

Pre-judgment/post-award interest is added as a matter of right under New Hampshire law. Post-award interest is awarded from the date of the Award until judgment is entered:

> [T]he New Hampshire Supreme Court has recognized a common law basis upon which to award pre-judgment interest on confirmed arbitration awards. Therefore, under New Hampshire law interest does accrue on an arbitration award from the date the award is handed down by the arbitrator until the date judgment is entered confirming the award.  Such interest accrues at New Hampshire's statutory rate . . . .

*Synchronics*, 1995 U.S. Dist. LEXIS 17066, at *9; *see also Metro. Property & Liab. Ins. Co. v. Ralph*, 640 A.2d 763, 766 (N.H. 1994) ("general rule that interest runs from the date of an arbitration award").  The statutory interest rate for 2014 is 2.1%.  *See* N.H. Rev. Stat. Ann. § 336:1, II; http://www.courts.state.nh.us/sitewidelinks/interest.htm.

**Post-judgment Interest.**  In a diversity case to confirm an arbitration award under the FAA, post-judgment interest is governed by and calculated according to 28 U.S.C. § 1961(a). *Synchronics*, 1995 U.S. Dist. LEXIS 17066, at *9-10.  An award of post-judgment interest is mandatory and runs "from the date judgment is entered until the judgment is satisfied."  *Id.* at *10.

PLG respectfully requests that the Court award it pre- and post-judgment interest.

---

[4]  Subject matter jurisdiction here is based solely upon diversity of the parties because the FAA itself does not provide a basis for federal question jurisdiction.  *PCS 2000 LP v. Romulus Telecomms.*, 148 F.3d 32, 34 (1st Cir. 1998).

**III.     Sher Leff's State Law Claim Must Be Dismissed.**

Sher Leff invokes only state arbitration law in its complaint.  However, absent a clear

agreement to apply state arbitration law, the FAA applies where there is proper diversity

jurisdiction and a contract involving interstate commerce.  *Allied-Bruce Terminix Cos. v.*

*Dobson*, 513 U.S. 265, 271 (1995); *New York Stock Exch. Arbitration v. Shearson Lehman*

*Hutton Inc.*, 948 F.2d 117, 120 (2d Cir. 1991); *Rodriguez v. Prudential-Bache Sec.*, 882 F. Supp.

1202, 1206-07 (D.P.R. 1995), *aff'd sub nom. Prudential-Bache Secs. v. Tanner*, 72 F.3d 234, 239

(1st Cir. 1995); *Leader Tech. Co. v. MultiNational Res., Inc.*, 2004 DNH 178, 3-4 (applying FAA

and rejecting argument to apply state law where the "parties' agreement concerns interstate

commerce").  The FAA applies here.

First, the parties did not agree to apply state arbitration law.  "If the parties intend that

state arbitration laws govern their proceedings, however, that intent must be stated clearly to

avoid the presumption that the FAA governs arbitration."  *Leader Tech.*, 2004 DNH 178, 4

(citing cases).  Here, as in *Leader Tech*, there is nothing in the arbitration agreement or in any

other agreement stating – much less clearly stating – that state *arbitration* law would apply rather

than the FAA.

To the contrary, the arbitration panel here expressly ruled in its first case management

order that the "applicable law" would be "[t]he Federal Arbitration Act and the JAMS

Comprehensive Rules and Procedures" and noted that the "parties have not agreed as to the

applicable state, *substantive* law."  Report of Preliminary Arbitration Teleconference and Case

Management Order No. 1, at 4 (Mar. 21, 2013) (emphasis added) (attached as Exh. D to

Ogorchock Decl.).  Sher Leff never objected to this order establishing the FAA as the applicable

arbitration law.  Even after the parties subsequently agreed that the substantive law of New

Hampshire would govern their dispute, the panel issued two more case management orders again invoking the FAA as the applicable arbitration law – to which Sher Leff also never objected.  *See* Case Management Order No. 2, at 4 (Apr. 23, 2013) (attached as Exh. E to Ogorchock Decl.); Case Management Order No. 3, at 4 (May 21, 2013) (attached as Exh. F to Ogorchock Decl.). The parties thus consented to application of the FAA and Sher Leff has waived any argument regarding the applicability of state arbitration law by failing to object to these rulings.[5]

Second, there is proper diversity jurisdiction and the parties' underlying contract or transaction involves interstate commerce within the meaning of section 2 of the FAA.  *See* 9 U.S.C. § 2.  The Supreme Court has held that the "involving commerce" language of section 2 exercises Congress' commerce power to the full.  *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003); *Allied-Bruce Terminix Cos.*, 513 U.S. at 277.  The underlying contract out of which this dispute arises, *i.e.*, the Legal Services Agreement between Sher Leff, PLG and the State of New Hampshire, involves interstate commerce – for multiple reasons.  First, the essence of the LSA is an agreement by a California law firm, a Massachusetts law firm and a New Hampshire client for the provision of legal services across state lines (to sue oil companies located all over the country no less).  *See Alafabco*, 539 U.S. at 57 (FAA applies where party to arbitration "engaged in business" across state lines).  Second, the legal services the firms have in fact provided under the contract have been interstate (including depositions taken all over the country), and the distribution of all settlement monies and *Hess* legal fees have crossed state lines and will continue to do so.  *See id.* (FAA applies where transaction at issue involves assets

---

[5] *See Bergeron v. Ridgewood Secs. Corp.*, 610 F. Supp. 2d 113, 117 n.3 (D. Mass. 2009) (objections to case management order  were "waived by [party's] failure to lodge them in a timely manner"); *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 250 F.R.D. 452, 457-58 (N.D. Cal. 2008) (stating that case management order "is the single most important document governing the conduct of the parties" and holding that party who "failed to be diligent in seeking relief from the case management order" waived any objections to it).

in multiple states); Final Award at 11 (noting *Hess* case was litigated in federal court in New York City for four years due to removal and transfer).  Third, interstate legal services are a "general practice" that Congress could regulate under the Commerce Clause.  *Alafabco*, 539 U.S. at 58.[6]  Under *Alafabco*, any of these three grounds would be sufficient to trigger FAA applicability.

In short, the law is clear that the FAA presumptively applies to arbitrations over interstate contracts or transactions, the arbitrators and the parties have always understood that the FAA would apply, and there is more than enough interstate activity to invoke the statute.  The FAA governs the issue of whether the arbitration award should be enforced.  Sher Leff has thus failed to state a claim upon which relief may be granted and its complaint must be dismissed.[7]

## IV.    The Court Should Expedite This Motion.

Pursuant to Local Rule 7.1(f), PLG respectfully requests the Court expedite its consideration and resolution of this motion.  PLG recognizes the many pressing demands on the Court's time and the importance of other pending cases.  There is good cause to expedite here, however, for several reasons.

First, "[t]he primary purpose served by the arbitration process is expeditious dispute resolution."  *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999).  The Federal Arbitration Act thus "provides for expedited judicial review to confirm, vacate, or modify arbitration awards."  *Hall Street Assocs.*, 552 U.S. at 578.  The FAA establishes a "national policy favoring arbitration

---

[6] Further, when the current dispute over the *Hess* fees due and owing under the 2010 LSA arose, Sher Leff and PLG entered into an interstate agreement to arbitrate.  *See* Arbitration Agreement at ¶ 1.4 (requiring arbitrators from three different states).

[7] Procedurally, this motion under the FAA is the proper vehicle to address dispositive arguments relating to an arbitration award – no pleadings are even required under the summary procedures of the FAA.  *See* 9 U.S.C. § 6; *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 112 (2d Cir. 2012); *Nat'l Cas. Co. v. OneBeacon Am. Ins. Co*., 2013 U.S. Dist. LEXIS 92840, at *17-18 (D. Mass. July 1, 2013); *Cessna Aircraft Co. v. Avcorp Indus*., 943 F. Supp. 2d 1191, 1195-96 (D. Kan. 2013).

with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway" and thus arbitration is not to be "merely a prelude to a more cumbersome and time-consuming judicial review process."  *Id*. at 588; *accord Doral Fin. Corp. v. Garcia-Velez*, 725 F.3d 27, 31 (1st Cir. 2013) ("the arbitration process seeks to ameliorate the time and expenses generally associated with judicial proceedings ….  By agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.") (internal quotation marks omitted); *Woods v. PAM Transp., Inc.-LU*, 440 Fed. Appx. 265, 268 (5th Cir. 2011) (noting the "strong policy favoring expeditious enforcement of arbitration awards").  Indeed, the parties here entered into an arbitration agreement stating that "[t]ime is of the essence for any arbitration under this agreement." Arbitration Agreement at ¶ 1.6.  A speedy resolution is also appropriate because it is not in the best interests of the firms' mutual client, the State of New Hampshire, for its lawyers to be locked in litigation over the arbitration proceeding, all while the client's $236 million judgment is under appeal.

Second, Sher Leff may try to deprive PLG of future *Hess* legal fees absent a prompt order of confirmation.  The panel already has ruled that "Sher Leff has failed to live up to its obligations under the Revolving Fund and the 2010 LSA," *see* Final Award at 44, and thus ordered a transfer of the Revolving Fund from Sher Leff to PLG in order to protect PLG's fees from future transgressions.  And it is now a matter of record that Sher Leff's sole shareholder, Alexander Leff, is not an honest man.  Leff told the firms' mutual client at a meeting on January 14, 2013, that PLG had orally agreed to be bound by an unsigned Joint Representation Agreement ("JRA").  The Panel found Leff's story, which he repeated under oath at the arbitration hearing, to be false:

> From the beginning, Sher Leff was aware of its obligations pursuant to the unambiguous language contained in the LSA providing for a 78%/22% fee split. There was no mention of proportionality, and Sher Leff's proposal to add a proportionality requirement was rejected by Pawa. . . . Leff knew this was the arrangement Sher Leff had entered into.  This is confirmed by Leff's own admissions and by Sher Leff's course of conduct.  Instead of living up to the agreement he made, Leff began pressuring Pawa to renegotiate.  Pawa refused.  Finally, ten years after the parties had settled upon how they would move forward in this litigation, Leff produced the written JRA to the Attorney General stating that this is what Pawa had agreed to.  This was not true, and Leff knew as much.  In sum, had Sher Leff not acted in bad faith and instead had lived up to its obligations, this arbitration would never have been necessary.

Final Award at 33; *see also id.* at 12-13 (factual background), 14-18 (summarizing evidence contradicting Leff's story).[8]

Finally, fundamental justice militates in favor of expediting this proceeding.  Sher Leff has pocketed over $27 million in *Hess* legal fees under a contract with the firms' mutual client while doing everything possible to interfere with PLG's fees under the very same contract.  At the hearing Pawa testified that Leff threatened him "prolonged and difficult litigation" if Pawa would not accept less than the amount owed under their fee agreement – testimony that Leff never denied.  Arb. Hr'g Tr. 1738:24-1739:9 (Aug. 7, 2013) (attached as Exh. G to Ogorchock Decl.).  Expediting this confirmation proceeding will ensure that Sher Leff cannot use the litigation process as a delay tactic as Leff vowed to do at the outset of this dispute.

## CONCLUSION

For the reasons set forth above, Defendant Pawa Law Group, P.C. respectfully requests that this Court enter an order confirming the Final Award against Plaintiff Sher Leff, LLP, entering final judgment in favor of PLG in conformity with the Final Award including the

---

[8] There is even some risk that Sher Leff may cease to exist once *Hess* is concluded – all of its partners other than Leff have recently departed the firm.  David Ruiz, Gutted by Partner Departures, Sher Leff Fills the Holes (July 30, 2013), www.rbwaterlaw.com/media/Daily%20Journal%20Article_7.30.13.pdf.  The only senior lawyer left at the firm is Leff himself, but he does not represent clients; he is a wealthy man with a law degree who invests in contingency-fee cases.

$51,079.28 in arbitration fees and costs paid by PLG, dismissing Sher Leff's claim(s), awarding

PLG pre- and post-judgment interest, and such other and further relief as the Court deems just

and proper.

Dated: January 23, 2014

                                        Respectfully submitted,

                                        PAWA LAW GROUP, P.C.

                                        By its counsel,


                                        /s/ James Ogorchock
                                        James Ogorchock (NH Bar # 9360)
                                        Sheehan Phinney Bass + Green PA
                                        1000 Elm Street,17th Floor
                                        Manchester, NH  03101
                                        (603) 627-8233
                                        jogorchock@sheehan.com

Of Counsel:
Robert D. Cultice (Mass. BBO # 108200)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526-6000
Robert.Cultice@wilmerhale.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 23, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and that counsel of record for plaintiff were served via the CM/ECF system.


/s/ James Ogorchock
 James Ogorchock (NH Bar # 9360)

16